William J. Orlicky and Esther R. Orlicky v. Commissioner.
Orlicky v. Commissioner
Docket No. 4447-70SC.
United States Tax Court
T.C. Memo 1972-2; 1972 Tax Ct. Memo LEXIS 253; 31 T.C.M. (CCH) 2; T.C.M. (RIA) 72002; January 4, 1972, Filed William J. Orlicky, pro se, 217 S. Bella Vista Drive, Tucson, Ariz., Dennis C. DeBarry, for the respondent. SACKS Memorandum Findings of Fact and Opinion SACKS, Commissioner: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1968 in the amount of $237.51. The sole issue for decision is whether the sum of $1,158.84 received in 1968 by petitioner William J. Orlicky as "sick pay" under a health and insurance plan for sickness was properly excludable from income under the provisions of section 105(d) of the Internal Revenue Code of 1954. [1]
Findings of Fact Practically all of the facts have been stipulated by the parties. Their stipulation, together *254 with the attached exhibits, is incorporated herein by this reference. Petitioners are husband and wife who at the time of the filing of their petition herein resided in Tucson, Arizona. Their joint return for the calendar year 1968, made on the cash basis, was filed with the internal revenue service center at Ogden, Utah. Esther R. Orlicky is a party hereto only by virtue of having participated in the filing of a joint return. The term petitioner, as used hereinafter, will therefore refer only to William J. Orlicky. During the calendar year 1968 petitioner, who is an aircraft navigator by profession, was employed by the Flying Tiger Line, 3 Inc., an international carrier of air freight. While so employed petitioner was covered by a health and accident insurance plan for personal injuries or sickness maintained by Flying Tiger. The provisions of this plan allowed petitioner to accumulate, at any one time, up to 180 days of "sick leave." For each such day of "sick leave" petitioner was entitled to one day of "sick pay" (defined as a payment in lieu of wages while absent on account of injury or sickness). "Sick pay" was, under the terms of the plan, payable to petitioner on the *255 same basis and in the same amount as his normal pay. Petitioner's normal pay during the period here material consisted of a "base pay" of $375 per month plus a "flight pay guarantee" of the sum due for 70 hours of flying time per month in the equipment then being flown. In addition, petitioner might also be entitled to further "flight pay" earned for hours flown during any month in excess of the "flight pay guarantee." On August 14, 1968 petitioner began a period of absence from Flying Tiger, due to illness, which was to last through December 31 of that year. As of August 14, 1968 petitioner had accumulated 26 days of "sick leave." Between August 14, 1968 and September 8, 1968 Flying Tiger paid petitioner 26 days of "sick pay" amounting to $1,158.84 (which amount equaled petitioner's base pay plus his flight pay guarantee for that period of time). Beginning on September 9, 1968 and extending through December 31, 1968 petitioner was in "leave without pay status" at Flying Tiger - i.e., he remained on the rolls as navigator, but he was paid nothing. On his joint Federal income tax return for 1968 petitioner excluded from his income the sum of $1,158.84 [2] paid to him as "sick pay" *256 by Flying Tiger pursuant to the provisions of section 105(d) of the Code. In his statutory notice of deficiency respondent determined that the sick pay sought to be excluded by petitioner exceeded 75 percent of petitioner's normal weekly wages, and that therefore the limiting provisions of section 105(d) - providing for the non-applicability of the exclusionary benefit of section 105(d) to the first 30 days of each illness, came into play. For this reason, he included the claimed sick pay in petitioner's income. Opinion While as a general rule "gross income" for Federal income tax purposes includes all income from whatever source derived, section 105(d) of the Code provides a limited exclusion from income for amounts paid to an employee by his employer (or attributable to payments by such employer) under a health insurance plan, provided such payments constitute payments in lieu of wages for a period during which the employee is absent from work on account of sickness. The exclusionary *257 relief provided by the statute does not, however, apply to any amounts paid to any employee which are attributable to the first 30 calendar days of an illness if such amounts are paid at a rate which exceeds, generally speaking, 75 percent of the employee's regular wage. In the instant case, it is respondent's position that since the Flying Tiger plan under scrutiny provided for the payment to petitioner of "sick pay" exactly equal to his normal pay for a period of 26 days (the entire time such sick pay "in lieu of wages" was paid) such amount ipso facto exceeds 75 percent of his "regular wages." Petitioner, on the other hand, contends that if the Court would view the payment made by Flying Tiger not as having been made "in lieu of wages" for the 26 days of sick leave which he had accumulated, but as having been made in lieu of all wages for the entire time he was sick (i.e., August 14 through December 31, 1968) it would be elementary arithmetic to arrive at the conclusion that during this entire period of time he was making far less than 75 percent of his normal wage. Much as it might desire to do so the Court, however, cannot view the law as petitioner would like it to be, but *258 must apply it as it is written. And the writing is clear that petitioner's position is not well taken. The statute speaks in terms of the "first 30 calendar day period," and amounts which are paid "attributable" thereto. Under the plan pursuant to which petitioner was covered, he was "paid" for the first 26 days of his illness (i.e., the entire period of his accumulated sick leave) as sick pay. Thereafter, he went into a "leave without pay" status. It is clear to the Court that the payment received by petitioner from Flying Tiger was "attributable" to those 26 days and no other. It is also clear that such 4 payment constituted, under the terms of Flying Tiger's plan, "payment * * * in lieu of wages for a period during which * * * was absent from work on account of * * * sickness." This being so the Court must agree with respondent that petitioner was paid the sick pay in question at a rate which exceeded 75 percent of his regular wage, and that as such it is not excludable from income under the provisions of section 105(d) of the Code. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. All Code references herein are to the Internal Revenue Code of 1954.↩
2. The actual amount claimed on petitioner's return for 1968 as a sick pay exclusion was $1,250. However, petitioner has conceded that the correct amount claimed should have been $1,158.84.↩